THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GABRIEL MADISON,                          :

      Plaintiff,                          :

vs.                                       :       CIVIL ACTION 05-00428-CG-C

WARDEN JERRY FERRELL, et al.,             :

      Defendants.                         :

REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 1983 by an Alabama prison inmate, proceeding *pro se* and *in forma pauperis*, which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  Plaintiff claims that he was denied due process; that he was denied sufficient living conditions, including prison overcrowding, inadequate diet, and inadequate laundry care; and that he was denied appropriate medical care, while incarcerated in the J.O. Davis Correctional Facility ("Davis"), and the Fountain Correctional Facility ("Fountain") in Atmore, Alabama.[1] (Doc. 1 at 11-17, Complaint; and doc. 6 at 2-4; First Amended Complaint).  Initially, Plaintiff appears to allege that the actions of Alabama Department of Corrections

---

[1]J.O. Davis Correctional Facility and Fountain Correctional Facility are in very close proximity to each other, and it appears that some of Plaintiff's claims may have occurred at J.O. Davis Correctional Facility and some may have occurred at Fountain Correctional Facility.  This issue is moot, however, as this Court has determined that Plaintiff has failed to prove a constitutional violation by Defendants.

("ADOC") Defendants Jerry Ferrell, Walter Myers, Tony Patterson, Jeffrey Knox, Wayne Gray, James Dunn, and Donal Campbell[2] violated the Due Process Clause, along with the Eighth Amendment prohibition against cruel and unusual punishment, and as relief, Plaintiff seeks "money damages in the form of $100,000 in each individual and each official capacity."  (Doc. 1 at 18).  Additionally, Plaintiff filed a Second Amended Complaint asserting a state law cause of action, naming as Defendant, fellow inmate George Zeigler, claiming that inmate Zeigler assaulted Plaintiff.  (Doc. 9, Second Amended Complaint).  Plaintiff seeks an award of $100,000 for damages against Defendant Zeigler in his individual capacity.  (Id. at 2).

On September 11, 2006, Defendant inmate George Zeigler filed a Special Report, in which he includes his Answer to Plaintiff's Amended Complaint.  (Doc. 15, Special Report and Answer).  In his pleading, Defendant inmate Zeigler asserts that Plaintiff has failed to state a claim, as Defendant Zeigler was found not guilty of the May 7, 2005, incident made the basis of the claim by Plaintiff against Zeigler.  (Id.).

 On September 18, 2006, this Court entered an Order converting Defendant Zeigler's Special Report and Answer to a Motion for Summary Judgment.  (Doc. 16, Order).  Next, Plaintiff filed a Motion for Summary Judgment on October 11, 2006,

---

[2]The Court notes that Defendant Donal Campbell was never served in this matter, as he is no longer employed by the Alabama Department of Corrections.  While the Court could substitute current Commissioner Richard F. Allen into this action, this is unnecessary as this Court has determined that Plaintiff has failed to show any constitutional violations by any Defendants in this matter.  Therefore, this issue is moot.

reiterating his original claims.  (Doc. 17, Motion for Summary Judgment).

ADOC Defendants Ferrell, Myers, Patterson, Knox, Gray, and Dunn filed a Special Report (Doc. 22, Special Report) on April 26, 2007, denying that they violated Plaintiff's constitutional rights and contending that Plaintiff has failed to state a claim in this action.  Additionally, ADOC Defendants have asserted numerous defenses including, in part, the general defense, qualified immunity, absolute immunity, and that Plaintiff's claims are barred pursuant to the Prison Litigation Reform Act.  (Doc. 22).  Defendants also assert that they are not physicians and therefore unable to either diagnose or prescribe treatment for Plaintiff.  (Id.).  Defendants further contend that Plaintiff has failed to offer any proof of deliberate indifference of the ADOC Defendants, nor has Plaintiff specified any facts concerning Defendants' alleged refusal or failure to provide access to medical care, to provide an adequate diet, and to provide adequate living conditions.  (Id.).

Subsequently, on May 1, 2007, this Court entered an Order converting the ADOC Defendants' Special Report to a Motion for Summary Judgment.  (Doc. 24).  In accordance with the Court's Order, ADOC Defendants' Motion for Summary Judgment, as well as Defendant inmate Zeigler's Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment, and Plaintiff's Response to Defendants' Motion for Summary Judgment have been taken under submission.[3]  After consideration by the Court, it is

---

[3]Plaintiff filed an additional Motion for Summary Judgment on May 31, 2007. (Doc. 26).  Per this Court's Order on June 7, 2007, this Court is treating Plaintiff's

recommended that Defendant inmate Zeigler's Motion for Summary Judgment be granted, that ADOC Defendants' Motion for Summary Judgment be granted, and that this action against Defendant inmate Zeigler be dismissed without prejudice, and that this action against the ADOC Defendants be dismissed with prejudice, and that judgment be entered in favor of ADOC Defendants  Jerry Ferrell, Walter Myers, Tony Patterson, Jeffrey Knox, Wayne Gray, James Dunn, and Donal Campbell, Defendant inmate George Zeigler, and against Plaintiff Gabriel Madison on all claims.

## I. FACTS

1.      On or around May 7, 2005, while incarcerated at Fountain Correctional Facility, Plaintiff was involved in an altercation with fellow inmate Defendant George Zeigler while working "out in the field on slop/trash duty." (Doc. 1 at 12).  As a result of this altercation, Plaintiff sustained injuries including a cut above and a cut below his eye, a cut on his nose, and a cut on his lip.  (Id.).  Plaintiff complains that he had to "walk a quarter of a mile" in order to receive medical attention.  Plaintiff alleges that once he reported the altercation to Officer Watts, Officer Watts then called someone, and Officer Rabon appeared at the back gate and let Plaintiff inside the gate.  (Id. at 13).  Plaintiff states that he advised Officer Rabon that Defendant inmate Zeigler had attacked him, and that Officer Rabon instructed Officer Watts to call someone to pick up inmate Zeigler immediately.  (Id.).

_____

pleading as a Response to Defendants' Motion for Summary Judgment.  (Doc. 28, Order).

2.      Subsequently, Lieutenant Williams and Officer Davis arrived at the back gate, and Plaintiff advised them that inmate Zeigler had attacked him by the trash dumpster.  (Id.).    Lieutenant Williams then instructed Officer Rabon to take Plaintiff to the infirmary for medical treatment.  After receiving medical treatment, Plaintiff was placed in segregation, pending an investigation into the incident.  (Id.).  Plaintiff alleges that several days later he was taken to an investigation hearing by Sergeant Knight, and Warden Myers II, Captain Patterson, and Captain Knox were present at this hearing.[4] Plaintiff claims that during this hearing, inmate Zeigler openly confessed to hitting Plaintiff with a stick.  Plaintiff claims that inmate Zeigler hit him because Plaintiff would not take orders from Zeigler.  (Id. at 14).  During the same hearing, according to Plaintiff, Defendant inmate Zeigler later recanted his story, and testified that he did not have a stick, but that Plaintiff had the stick and that Zeigler was just defending himself.  (Id.). Plaintiff alleges that Warden Myers ended the hearing, stating that more investigation needed to be done to determine which inmate used the weapon during the altercation.

3.      On May 17, 2005, according to Plaintiff, he was taken to a disciplinary hearing with Officer Godwin, and arresting Officer Davis.  Plaintiff was then found guilty of Rule #34, Fighting with a Weapon, and Plaintiff learned later that Defendant inmate Zeigler was found not guilty and sent back to J.O. Davis, and had all of his rights

---

[4]Plaintiff only provides the Court with one date of a disciplinary hearing, and that date is May 17, 2005.  Based upon a review of the record in this action, this is the only date in which the Court has determined that a disciplinary hearing was held regarding this matter.

restored.  (Id. at 15).  Plaintiff claims that a correctional officer that he identifies with the name "Thames" informed Plaintiff that Zeigler had confessed in her presence to attacking Plaintiff.  (Id.).  Plaintiff is not clear as to what punishment he received for this violation, although according to the records, he received thirty days loss of privileges, with no segregation.  (Doc. 22, Attachment 1 at 12).

4.      As Plaintiff's second claim, he alleges that on February 9, 2005, he was transferred to Davis from Fountain, and that he was assigned to "slop/trash" when he arrived.  (Doc. 1 at 16).  On February 10, 2005, Plaintiff claims that he was sent out on the job with no work instructions, and despite his request for one, without a back brace. (Id.).  Plaintiff claims that Sergeant Dunn, Captain Patterson, and Lieutenant Gray paid no attention to his request for a back brace.  On approximately February 22, 2005, Plaintiff alleges that he injured his back lifting slop cans, and he immediately notified Lieutenant Gray, who had him transported to Fountain for a medical examination.  (Id.). Plaintiff claims that he had a "severe back injury" but was sent to work continuously on the same job.  Plaintiff contends that Sergeant Dunn and Captain Patterson failed to provide him work instructions and proper equipment, and that this failure contributed to Plaintiff's alleged injury. (Id.).

5.      In Plaintiff's First Amended Complaint, he complains that he has been subjected to overcrowded living conditions, inadequate health care, inadequate diet, inadequate laundry, and generally hazardous living conditions.  (Doc. 6, First Amended Complaint).  He further claims that the prison officers were overworked, and that the

6

prison was understaffed.  (Id. at 2).  Plaintiff alleges that the prison staff was unprepared

physically and psychologically to properly supervise and maintain security.  Plaintiff

further contends that the "chow hall" was not sufficient to handle the needs of the

population, and that as a result, inmates would be forced to wait in line for up to an hour

or longer, "in cold, heat, rain, to be served," and some inmates had to stand to eat because

of lack of seating.[5]  Plaintiff further complains that the food was inadequate, and was

prepared in unsanitary conditions.  Finally, Plaintiff alleges that Fountain's health care is

inadequate because there is not a doctor present on weekends, and because during the

week, a doctor is on duty, but that doctor answers the needs of inmates at several nearby

prison facilities.  (Id. at 3).  Further, Plaintiff complains that on the day of his altercation

with inmate Zeigler, he requested to see a doctor, but was only seen by a nurse.  Plaintiff

alleges that he did not see a doctor for approximately three weeks.  (Id.).

6.      Next, in Plaintiff's Second Amended Complaint, he adds as a Defendant,

fellow inmate George Zeigler.  (Doc. 9, Second Amended Complaint).  Plaintiff asserts

the state law cause of action of assault and battery "with an intent to cause and do bodily

harm."  (Id.).  Plaintiff is seeking $100,000 from inmate Zeigler.

7.      According to ADOC Defendants, in 2005, Plaintiff was assigned to J.O.

---

[5]The Court notes that Plaintiff lacks standing to bring any claims on behalf of any
other inmates housed at his prison.  Further, the Court notes that Plaintiff does not specify
as to whether he actually had to wait in long lines, or had to stand to eat his dinner.
However, this issue is moot, as the Court finds that Plaintiff has failed to show a
constitutional violation by any Defendants in this action.

Davis Correctional Facility in Atmore, very close in proximity to Fountain Correctional Facility. (Doc. 22, Special Report). On May 7, 2005, Plaintiff was involved in a fight with inmate Zeigler. Plaintiff reported the fight at the Backgate of Fountain, and was immediately taken to the Health Care Unit for examination. (Id. at 6). Both inmates were charged with fighting, but after an investigation was conducted, it became clear that Plaintiff was the instigator of the fight. Plaintiff was given a disciplinary hearing, and was found guilty. While the hearing officer recommended that Plaintiff spend forty-five days in segregation, Warden Myers only approved a thirty day loss of store, phone and visiting privileges. (Doc. 22, Attachment 1 at 12).

8.      The ADOC Defendants have filed affidavits in response to Plaintiff's allegations, along with their Special Report. (Doc. 22). Initially, Defendant Warden Jerry Ferrell avers that Plaintiff's allegations regarding the conditions of the kitchen and eating area at the Davis and Fountain facilities are simply untrue. Defendant Ferrell acknowledges that all inmates must stand in line for a short period of time, but provisions are made for inmates with standing profiles. Further, Defendant Ferrell states that the food is prepared in accordance with the Health Standards of the Alabama Department of Corrections and the State of Alabama. (Doc. 22, Attachment 3, Affidavit of Jerry Ferrell). Defendant Ferrell also explains that there is a doctor on duty during normal business hours, or one will be on call during business hours and after hours.

9.      Regarding the subject altercation, Warden Ferrell states that Plaintiff was found guilty of violating Rule #34, Fighting with a Weapon, and the investigation

8

revealed that Plaintiff was not hit with a rock or stick during the altercation with inmate Zeigler.  In fact, according to Defendant Ferrell, inmate witnesses confirmed that Plaintiff had a mop handle when the incident occurred, and that Plaintiff instigated the fight. Regarding Plaintiff's allegations of a back injury, Defendant Ferrell states that he had no knowledge of a back problem, nor of a medical profile which would have limited Plaintiff's duties.  (<u>Id.</u>).

   10. Likewise, Defendant Warden Walter Myers avers that Plaintiff's allegations in his complaints are untrue and without merit.  (Doc. 22, Attachment 4, Affidavit of Walter Myers).  Like Warden Ferrell, Defendant Myers acknowledges that inmates must stand in line for a short period of time, usually about fifteen to twenty minutes or less, and notes also that the food is prepared according to the Health Standards of the Alabama Department of Corrections and the State of Alabama.  (<u>Id.</u>).  Defendant Myers further avers that a doctor is usually on duty from 7:30 a.m. to 4:00 p.m., or one will be on call during normal business hours, as well as after hours.  (<u>Id.</u>).  According to Warden Myers, Plaintiff was found guilty of violating Rule #34, Fighting with a Weapon.  Warden Myers states that based upon the investigation conducted by Defendant Patterson, it was revealed that Plaintiff was not hit with a rock or a stick during the altercation with inmate Zeigler.  According to inmate witnesses, Plaintiff actually had a mop handle in his hand when the altercation occurred, and the evidence revealed that Plaintiff was the instigator of the fight.  (<u>Id.</u>).

11.      Defendant Tony Patterson[6] declares in his affidavit that Plaintiff's allegations are frivolous, unsubstantiated, and without merit.  (Doc. 22, Attachment 2, Affidavit of Tony Patterson).  Like the other Defendants, Patterson acknowledges that Plaintiff was involved in an altercation with inmate Zeigler on May 7, 2005.  Following the altercation, an incident report was completed based upon information gathered by interviewing Plaintiff and Zeigler, as well as the inmate witnesses.  Disciplinary action was initiated to both inmates for violating Rule #34, Fighting with a Weapon.  (Id.).  The disciplinary hearing was held by a fair and impartial staff member, and Plaintiff, not inmate Zeigler, was found guilty.  There were four inmate witnesses who each said that Plaintiff had a stick (mop handle) and swung it at Zeigler, which resulted in a fight between the two inmates.  All witnesses implicated Plaintiff as the instigator.  (Id.).

12.      Additionally, Defendant Patterson avers that prior to being given a job, Plaintiff appeared before a Job Board for a job assignment.  It was explained at that time what his newly assigned job was, and what was expected of him.  As to Plaintiff's allegation that he was made to work with a severe back injury, Defendant Patterson avers that if Plaintiff had been evaluated to have a severe back injury, the evaluating physician would have prepared a work stoppage profile that would have been honored.  (Id.).

13.      Next, Correctional Officer Jeffery Knox notes in his affidavit that at the time of the incident in May 2005, he was assigned as Captain at Fountain.  (Doc. 22,

---

[6]Defendant Patterson is currently Warden II at Holman Correctional Facility.

Attachment 5, Affidavit of Jeffrey Knox).  He was not involved the incident involving

Plaintiff and inmate Zeigler.  Other than being present when Warden Myers questioned

Plaintiff, Officer Knox had no involvement in the incident or the investigation

surrounding the incident.  Officer Knox avers that he did not conduct any investigation

into this incident, nor did he make any decision regarding this incident.  (Id.).

14.    An additional affidavit has been offered by Ruth Naglich, the ADOC

Associate Commissioner of Health Services.  (Doc. 22, Attachment 6, Affidavit of Ruth

Naglich).  Ms. Naglich explains that she is responsible for monitoring the components

and the quality of the provision of healthcare to those individuals who are in the care,

custody and control of the State of Alabama Department of Corrections.  Included in

those responsibilities is the monitoring of contracted health services, and the

administration of the ADOC's Quality Assurance Program for all health service

treatment.  (Id. at 1).

15.    Ms. Naglich avers that she has reviewed Plaintiff's medical record relative

to his complaints of back pain and other general physical maladies.  (Id.).  Ms. Naglich

reports that from January 5, 2005, until June 27, 2006, Plaintiff was seen by either a

licensed nurse, licensed nurse practitioner, or a licensed physician a total of twenty-six

times.  Eleven of these twenty-six times were actual doctor visits, and on three occasions,

Plaintiff was sent to an outside community hospital for diagnostic radiology procedures.

(Id.).  Plaintiff has been receiving routinely prescribed medication for both pain and

muscle spasms of his back since March 2005.

16.     According to Ms. Naglich, Plaintiff's original complaint of back pain was submitted on February 28, 2005.  (Id. at 2).  Plaintiff was then examined by a physician on March 2, 2005, and had x-rays of his lumbar spine on March 10, 2005.  The results of the x-rays, interpreted by Dr. Thomas J. Payne, III, Board Certified Radiologist, were as follows: "There is straightening of the spine which may be positional or may be related to muscle spasm.  The vertebrae are well aligned and show no evidence of any recent fracture or any destructive cone disease.  Impression Negative Study."  (Id. at 2).  After the results of this test were discussed with Plaintiff, he was given both medication and a plan of treatment to assist with relief of his back pain due to muscle spasms.  Apparently, Plaintiff stated that he was not pleased with the type of medication he was receiving, and on several occasions requested stronger pain medication that he could keep on his person. (Id.).

17.     Plaintiff was admitted to Fountain's inpatient infirmary for further evaluation on April 19, 2005, and refused to stay for treatment signing himself out against the medical advice of the doctor.  Plaintiff was given a temporary medical work restriction profile from April 20 to April 24, 2005, for a "lay-in."[7]  His ongoing medications have included a muscle relaxant, a non-steroidal anti-inflammatory agent, as

---

[7]The Court notes that a review of Plaintiff's medical records also reflects a temporary medical work restriction from March 31, to April 9, 2005.  (Doc. 32 at 25, Notice of Filing Medical Records).  A review of Plaintiff's medical records also reveals that Plaintiff did not receive any other medical work restrictions, temporary or otherwise. (Id.).

well as a Percogesic pain control medication.  (Id.).  Plaintiff had a repeat lumbar spine x-ray on October 5, 2005, with the results interpreted by Dr. Payne as follows: "There is straightening of the spine which may be positional or may be related to muscle spasm. The vertebrae are well aligned and show no evidence of any recent fracture or destructive bone disease.  There is Hypertonic Spurring.  There are no other significant findings. Impression: There is evidence of Hypertrophic Spurring."  (Id.).  Plaintiff's primary attending physician at Fountain documented on May 14, 2006, that Plaintiff's pain was due to "mild back Arthritis" based on physical assessment and the results of the repeated diagnostic back x-rays.  (Id. at 3).   Finally, Ms. Naglich states that if Plaintiff's physical needs warrant a level of care beyond that of the on-site medical services at Fountain, he will have access to additional free world specialists.  According to Ms. Naglich, Plaintiff has received and has been given the appropriate access to medical services for the symptoms he has presented to date.  (Id.).

18.     The ADOC Defendants have also filed with this Court a certified copy of the incident report regarding the May 7, 2005, altercation between inmate Zeigler and Plaintiff.  (Doc. 22, Attachment 1).  This report documents that Plaintiff and inmate Zeigler had gotten into an altercation on May 7, 2005, when inmate Zeigler stepped off of the tractor to push a button on the trash compactor.  It was reported that Plaintiff picked up a stick or a mop handle and swung it at inmate Zeigler.  It was also documented that Plaintiff was the instigator of the altercation.  (Id.).  Various inmates' written statements are attached to the incident report, each affirming that Plaintiff was the instigator, and

also that Plaintiff was threatening others, and calling the other inmates vulgar, racist

names.  (Id. at 4-7).  The disciplinary report is also attached, and it reflects that Plaintiff

was found guilty during the disciplinary hearing and was sentenced to thirty days loss of

privileges.  (Id. at 10-12).

19.     Defendant Inmate George Zeigler filed a Special Report asserting that

Plaintiff has failed to state a claim upon which relief can be granted.  (Doc. 15, Special

Report and Answer).  Defendant inmate Zeigler points out that he was found not guilty of

assault following the prison investigation into the May 7, 2005, incident.  Zeigler also

offers his affidavit, stating in it that he was merely defending himself during the subject

altercation with Plaintiff.  (Doc. 15 at 3).

20.     Also attached to Zeigler's filing is a statement which was apparently written

by Zeigler in preparation for the hearing in May 2005, regarding this incident.  (Id. at 8).

In it, Zeigler claims that on May 7, 2005, he was unloading a tractor when he requested

that Plaintiff push a button for him.  Zeigler claims that Plaintiff replied, "[w]hy can't

somebody else push it, there's four of us out here."  (Id. at 8).  Despite Plaintiff's initial

resistance, Zeigler says that Plaintiff did push the button.  Zeigler claims that at the time,

Plaintiff was holding a mop handle.  After the inmates loaded some more barrels, Zeigler

once again asked Plaintiff to push the button because, according to Zeigler, Plaintiff was

closest to the button.  (Id.).  At this point, Zeigler claims that Plaintiff began cursing and

acting upset, so Zeigler jumped off the tractor and pushed the button.  (Id.).  Plaintiff then

grabbed Zeigler by the neck with one hand, while still holding the mop handle in the

14

other hand, and Zeigler claims at that point, Zeigler grabbed Plaintiff and took the stick

out of his hands.  When Plaintiff released the stick, Zeigler claimed that it hit Zeigler in

the face, and then Zeigler threw the mop handle to the ground and subsequently hit

Plaintiff.  Zeigler contends that he never had a weapon, except for the one he took from

Plaintiff and threw to the ground.  (Id.).  Zeigler claims that he was only acting in self-

defense, in protecting himself from an angry Plaintiff.  (Id.).

    21.    As a result of each of Plaintiff's claims, *i.e.,* that he received a false

disciplinary, that he was forced to work without instructions or a back brace, and

subjected to other general insufficient conditions of confinement, and that he has been

deprived of proper medical care, Plaintiff is requesting that the Court award money

damages in the amount of $100,000 against each ADOC Defendant in their individual and

official capacities. (Doc. 1 at 18).  Plaintiff also seeks an award of $100,000 against

Defendant inmate Zeigler in his individual capacity.  (Doc. 9 at 2).  Plaintiff has also

requested that this Court "give immediate relief by bringing all matters, and claims

addressed up to federally approved guidelines and standards."  (Doc. 6 at 4).

## II. SUMMARY JUDGMENT STANDARD

    1.    In analyzing the propriety of a motion for summary judgment, the Court

begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court

authority under Rule 56 to render "judgment as a matter of law" to a party who moves for

summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>,

477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).  The Court must view the

evidence produced by "the nonmoving party, and all factual inferences arising from it, in

the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir.

1989).

> 2.      However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not
> rest upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial.  If
> the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also Celotex Corp.</u>, 477 U.S. at 325-27.  "[T]here is no issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party.  If the evidence is merely colorable or is not significantly probative,

summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

249-50 (1986) (internal citations omitted).  "Summary judgment may be granted against a

party who fails to establish the existence of an element essential to that party's case and

on which that party will bear the burden of proof at trial." <u>Liberty Mut. Fire Ins. Co. v.

Sahawneh</u>, 2001 WL 530424, *1 (S.D. Ala. May 11, 2001) (citing <u>Anderson</u>, 477 U.S. at

249-50).

### III. DISCUSSION

> 1.      In this action, Plaintiff seeks redress for alleged constitutional deprivations

pursuant to 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that ADOC Defendants'

issuance of a false disciplinary to him, and their deliberate indifference to him, *i.e.,* that

he was forced to work without instructions or a back brace, and that he has been denied

other sufficient conditions of confinement, and that he has been deprived of proper

medical care, on or around February 9, 2005, and May 7, 2005, violated his rights under

the Eighth Amendment, and presumably the Due Process Clause.[8]  Plaintiff further seeks

to include the state law claim of assault and battery against Defendant inmate George

Zeigler in this action.  For the reasons set forth below, the Court finds that Plaintiff's

---

[8]Plaintiff appears to be suing all Defendants, with the exception of inmate Zeigler, in their official and individual capacities in this lawsuit. Initially, the Court notes that Defendant inmate Zeigler has no official capacity.  In any event, ADOC Defendants have asserted various types of immunity.  As state officials, Defendants are absolutely immune from suit *for damages* in their official capacities, see Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Defendants are not immune, however, from suit in their official capacities for prospective injunctive relief to end continuing violations of federal law.  See Ex parte Young, 209 U.S. 123, 155-56 (1908); see also Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right."  Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

allegations fail to establish any constitutional violation by Defendants.  Thus, it is

recommended that ADOC Defendants' Motion for Summary Judgment, as well as

Defendant inmate Zeigler's Motion for Summary Judgment be granted.

<u>Due Process Violation</u>

2.      In this action, Plaintiff seeks redress for alleged constitutional deprivations

pursuant to 42 U.S.C. § 1983.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .  For the purposes of
> this section, any Act of Congress applicable exclusively to the
> District of Columbia shall be considered to be a statute of the
> District of Columbia.

42 U.S.C. § 1983 (1994).

3.      Initially, the Court will consider Plaintiff's claim that Defendants' actions

violated his due process rights.  As discussed above, on May 7, 2005, Plaintiff was

charged with violating prison rule # 34, "Fighting With a Weapon."  (Doc. 22,

Attachment 1 at 1).  Immediately following the altercation, both Plaintiff and Defendant

inmate Zeigler were held in segregation while a full investigation was conducted into the

matter.  On May 17, 2005, Correctional Officer Scott Godwin presided over Plaintiff's

disciplinary hearing and found Plaintiff guilty of the rule violation and recommended that

Plaintiff be confined to forty five days of disciplinary segregation.  However, Warden

Myers only approved a loss of store, phone and visiting privileges for thirty days.  (Doc. 22 , Attachment 1 at 11).

4.   Plaintiff claims that ADOC Defendants violated his Fourteenth Amendment due process rights by determining that he was guilty of the rule violation, as opposed to determining that Defendant inmate Zeigler was guilty of the violation.  Plaintiff claims that during the hearing inmate Zeigler initially confessed that he had "swung a stick and hit plaintiff with it."  (Doc. 1 at 14).  Later, during the same hearing, according to Plaintiff, inmate Zeigler "quickly recanted his statement by saying that he didn't have a stick during the fight and that Plaintiff had the stick."  (Id.).  During the hearing, it was determined that Plaintiff did use the stick during the fight, and this finding was supported by the inmate witnesses.

5.   In order to assert a Fourteenth Amendment due process claim, Plaintiff must have been deprived of "life, liberty, or property. "  Wolff v. McDonnell, 418 U.S. 539, 556  (1974); U.S. Const. amend. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law...").  Plaintiff appears to claim a loss of liberty as a result of his confinement in disciplinary segregation[9]  and a loss of privileges for thirty days.  "A liberty interest may arise from

---

[9]Although somewhat unclear, after a review of the record, it only appears to the Court that Plaintiff was placed in disciplinary segregation while Defendants initially investigated the incident.  At that time, Defendant inmate Zeigler was also placed segregation.  However, following the investigation and hearing, Plaintiff was not placed in segregation for this violation.  Although it was recommended by the hearing officer, Warden Myers noted "no segregation" on the report, allowing only a punishment of thirty day loss of privileges. (Doc. 22, Attachment 10-13).

the Constitution itself, by reason of guarantees implicit in the word 'liberty'. . ., or it may

arise from an expectation or interest created by state laws or policies. . . ." Wilkinson v.

Austin, 545 U.S. 209, 125 S. Ct. 2384, 2393 (2005) (internal citations omitted).

> Following Wolff, we recognize that States may under certain
> circumstances create liberty interests which are protected by
> the Due Process Clause. . . .  But these interests will be
> generally limited to freedom from restraint which, while not
> exceeding the sentence in such an unexpected manner as to
> give rise to protection by the Due Process Clause of its own
> force . . . nonetheless imposes atypical and significant
> hardship on the inmate in relation to the ordinary incidents of
> prison life.

Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

6.      In Sandin, the Supreme Court held that there is no right inherent in the

Constitution, nor is there a state-created liberty interest, to be free from disciplinary

segregation.  Placement in disciplinary segregation as a form of punishment is not a

"dramatic departure" from the ordinary conditions of incarceration and does not "present

the type of atypical, significant deprivation in which a State might conceivably create a

liberty interest." Id., 515 U.S. at 485-86.  Rather, mere confinement to disciplinary

segregation is a type of discipline that should be expected by an inmate as an incident to

his criminal sentence.  Id. at 487.  Thus, even if he was placed in disciplinary segregation,

Plaintiff has no protected liberty interest to which the due process protections apply. See

id. at 486 (thirty days of disciplinary segregation did not trigger due process concerns);

Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (confinement in

administrative segregation for a period of two months was not a deprivation of a

constitutionally protected interest); Johnson v. Sinkston, 2006 WL 752991 (S.D. Ala. 2006) (confinement in disciplinary segregation for a period of twenty days did not constitute a deprivation of a liberty interest protected by due process).

      7.     In addition, this Court has held that there is no right inherent in the Constitution entitling a prisoner to privileges:

> [B]ased on a plain reading of the Constitution, the Court finds that there is no right inherent in the Constitution entitling a prisoner to privileges.  Accord  Id.  [Sandin] (finding no right inherent in the Due Process Clause to be free from disciplinary segregation); Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S. Ct. 274, 279 n. 9, 50 L. Ed.2d 236 (1976) (finding that eligibility for rehabilitation programs is not a sufficient interest to invoke due process); Meachum v. Fano, 427 U.S. 215, 216, 224-25, 96 S. Ct. 2532, 2534, 2538, 49 L. Ed. 2d 451 (1976) (finding the Due Process Clause itself does not protect a prisoner from being transferred to an institution with less favorable conditions); Wolff, 418 U.S. at 557, 94 S. Ct. at 2975 (finding no right in the Constitution to receive good-time credits for satisfactory behavior).

James v. Odom, 2000 WL 1136563, *3 (S.D. Ala. 2000) (unpublished).  Because Plaintiff's allegations do not concern a right inherent in the Constitution, he must show a state-created liberty interest in being accorded due process before his prison privileges can be restricted.  However, in James, this Court further held:

> [T]he restriction of privileges is a much less severe form of discipline than placement in disciplinary segregation.  By virtue of being in prison, a prisoner's life is heavily restricted. . . . Therefore, the increased restriction of privileges is neither "atypical" nor a "significant hardship" under the Sandin analysis and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence.

James, 2000 WL 1136563 at *5 (citations omitted) (plaintiff did not suffer a deprivation of a state-created liberty interest when, as a result of his disciplinary conviction, his store, phone, and visiting privileges were restricted for forty-five days).  Thus, Plaintiff's presumed claim that he was entitled to due process before being sentenced to thirty days loss of privileges is unavailing.

        8.      Moreover, even if Plaintiff could establish a liberty interest in remaining free from any alleged disciplinary segregation and from the loss of privileges, the Court finds that his due process rights were fulfilled by his disciplinary hearing. The procedural requirements for a disciplinary hearing are: (1) advance written notice; (2) a written statement of the evidence relied upon and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when "do[ing] so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-66.  The record shows that Plaintiff was given well over twenty-four hours advance written notice of the hearing.  (Doc. 22, Attachment 1 at 10-11).  Plaintiff was permitted to attend the hearing, give testimony, and present evidence.  (Id.).  Plaintiff was given the opportunity to prepare and present written questions to be asked of Defendants at the hearing.  (Id. at 10-12).  Plaintiff was informed of the hearing officer's decision.  (Id. at 11).  Plaintiff was given a copy of the signed and approved disciplinary report, which listed the findings of fact, the decision of the hearing officer, the reasons for the disciplinary action taken, and the sanctions imposed.  (Id. at 10-12).

        9.      Although Plaintiff claims that during the hearing, Defendant inmate Zeigler

confessed to being the instigator of the fight and using a weapon, Plaintiff has not put forth any evidence, other than his own opinion, that this occurred.  In every pleading that this Court has reviewed, it is indicated that inmate Zeigler testified that he did not have a weapon, and that he was defending himself from Plaintiff.  This is also supported by affidavits of the other inmates who witnessed the altercation.  The Court finds that Plaintiff has not shown a liberty interest to be protected in this hearing, and further, even if Plaintiff had shown a liberty interest, he has failed to show that his due process rights were violated.

<u>Denial of Sufficient Conditions of Confinement</u>

10.     Next, the Court turns to Plaintiff's Eighth Amendment claim of cruel and unusual punishment through his conditions of confinement at Fountain and Davis Correctional Facilities.  Specifically, Plaintiff claims that on February 9, 2005, Plaintiff was transferred to Davis from Fountain and was immediately assigned to "slop/trash." Plaintiff claims that on February 10, 2005, he was sent "out on the job with no work instructions," as well as with no back brace, which Plaintiff claims to have requested. Plaintiff claims that on February 22, 2005, he injured his back lifting slop cans.  Plaintiff claims that these actions or failure to properly train him and equip him with a back brace violated his Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 1 at 16-17).

11.     Additionally, Plaintiff alleges that he has been subjected to "all kinds of abuse," including overcrowded living conditions, inadequate living conditions,

inadequate diet, inadequate laundry care, and inadequate health care.  (Doc. 6 at 2).
Plaintiff claims that the correctional officers were overworked and the prison was under
staffed, thus presenting security concerns for the inmates.  He also complains that the
"chow hall" was not sufficient to handle the needs of the population and that inmates
would have to wait in line for up to an hour in cold, heat, and rain to be served.  (Id.).
Plaintiff further complains that there were unsanitary conditions in the chow hall and in
the food preparation.  He claims that the diet was far below minimum standards for good
health.  (Id.).  Notably, Plaintiff offers the Court no supporting facts regarding these
allegations, and has put forth nothing more than his own opinions concerning these
issues.  Further, Plaintiff has not alleged any personal injury stemming from the
allegations of insufficient conditions of confinement, absent the alleged back injury.

12.    The Eighth Amendment protects incarcerated prisoners from punishment
that is "cruel and unusual."  Whitley v. Albers, 475 U.S. 312, 318, 106 S. Ct. 1078, 1083,
89 L. Ed. 2d 251 (1986); see also Ingraham v. Wright, 430 U.S. 651, 664, 97 S. Ct. 1401,
1408-09, 51 L. Ed. 2d 711 (1977).  Specifically, the Eighth Amendment "prohibits the
unnecessary and wanton infliction of pain. . . , the infliction of pain totally without
penological justification. . . , [and] the infliction of punishment grossly disproportionate
to the severity of the offense."  Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing
Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 2398, 69 L. Ed. 2d 59 (1981)).

13.    Further, "[t]he 'cruel and unusual punishments' standard applies to the
conditions of a prisoner's confinement."  Chandler v. Crosby, 379 F.3d 1278, 1288 (11th

Cir. 2004) (citing <u>Rhodes</u>, 452 U.S. at 345-46, 101 S. Ct. at 2398-99).  The Eighth

Amendment, however, "does not authorize judicial reconsideration of 'every

governmental action affecting the interests or well-being of a prisoner.'" <u>Campbell v.</u>

<u>Sikes</u>, 169 F.3d 1353, 1362 (11th Cir. 1999) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312,

319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986)).  Furthermore, "the Constitution does

not mandate comfortable prisons."  <u>Rhodes</u>, 452 U.S. at 349, 101 S. Ct. at 2400.  "If

prison conditions are merely 'restrictive and even harsh, they are part of the penalty that

criminal offenders pay for their offenses against society.'" <u>Chandler</u>, 379 F.3d at 1289

(quoting <u>Rhodes</u>, 452 U.S. at 347, 101 S. Ct. at 2399).  Prison conditions violate the

Eighth Amendment only when they "involve the wanton and unnecessary infliction of

pain." <u>Id.</u>

   14.  In <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 109

S. Ct. 998, 103 L. Ed. 2d 249 (1989), the United States Supreme Court reiterated the

State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him
> there against his will, the Constitution imposes upon it a
> corresponding duty to assume some responsibility for his
> safety and general well-being. . . .  The rationale for this
> principle is simple enough: when the State by the affirmative
> exercise of its power so restrains an individual's liberty that it
> renders him unable to care for himself, and at the same time
> fails to provide for his basic human needs -- *e.g.*, food,
> clothing, shelter, medical care, and reasonable safety -- it
> transgresses the substantive limits on state action set by the
> Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200, 109 S. Ct. at 1005-1006 (citations omitted).

15.    In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing. First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious'" so as to amount to the denial of a basic human need.  Chandler, 379 F.3d at 1289 (quoting Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992)).  A prisoner must prove the denial of "the minimal civilized measure of life's necessities."  Chandler, 379 F.3d at 1289 (quoting Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399).  The challenged condition must be "extreme."  Id.  Although an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, id. at 35, 113 S. Ct. at 2481.  Moreover,

> the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

Id. at 36, 113 S. Ct. at 2482.

16.    Second, the inmate must prove that the prison official was subjectively

"deliberately indifferent" to a substantial risk of harm.  Farmer v. Brennan, 511 U.S. 825, 828-29, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837, 114 S. Ct. at 1979.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.   In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk.  Farmer, 511 U.S. at 844, 114 S. Ct. at 1982-83.  Moreover, "[a] plaintiff must also show that the constitutional violation caused his injuries."  Marsh v. Butler County, Ala., 268 F. 3d 1014, 1028 (11th Cir. 2001) (en banc) (alteration in original).

17.     Having set forth the general legal principles applicable to Plaintiff's claim, the Court now turns to the facts.   As the basis for his Eighth Amendment unconstitutional conditions of confinement claim, Plaintiff merely recites a list of general allegations.  He complains that he has been subjected to all kinds of abuse, that he has endured overcrowded and inadequate living conditions, an inadequate diet, inadequate laundry care, and inadequate health care.   (Doc. 6 at 2).  Plaintiff offers no dates or details regarding this list of complaints.  Plaintiff does not even inform the Court as to what his

27

injuries have been as a result of each of these vague complaints, *i.e.*, what kind of injury he has suffered from the allegation of inadequate laundry care. The only remotely specific conditions of confinement allegation asserted by Plaintiff is that which relate to his job, including the alleged lack of instructions and lack of back brace.

18.     ADOC Defendants have averred that the conditions at both the Fountain and Davis facilities are maintained in accordance with laws of the State of Alabama. (Doc. 22, Attachments 2-4). Further, Defendant Patterson maintains that Plaintiff appeared before a Job Board to receive his work assignment, and at that time, it was explained to Plaintiff what his newly assigned job was, and exactly what was expected of him. (Doc. 22, Attachment 2 at 2). Despite Plaintiff's allegation that he was forced to work with a back injury, there is no medical evidence that Plaintiff was unable to perform the job that he was assigned. Although Plaintiff may have preferred a different job, there is no evidence that a different job was medically necessary. A review of Plaintiff's medical records reflects that only on two occasions was Plaintiff even issued a temporary medical work restriction. (Doc. 32 at 25 and 32). Plaintiff has offered no medical evidence that he needed any type of brace, as he claims. Defendant Patterson avers that if a doctor had determined that Plaintiff had a back injury which would have prevented him from working, the doctor would have prepared a work stoppage profile which would have been honored. (Doc. 22, Attachment 2 at 2).

19.     Under the circumstances of this case, Plaintiff's allegations related to his treatment at Davis and Fountain do not amount to the denial of a basic human need, <u>see</u>

28

DeShaney, 489 U.S. at 199-200, nor do they evidence a deliberate indifference to a substantial risk of serious harm to Plaintiff's health or safety.  See Farmer, 511 U.S. at 837-38.  Plaintiff has simply not alleged prison conditions which "involve the wanton and unnecessary infliction of pain."  Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.  Considering the evidence in the light most favorable to Plaintiff, the question is whether a jury could reasonably conclude that Defendants violated Plaintiff's rights under the Eighth Amendment.  Under the circumstances of this case, the Court finds that Plaintiff's allegations fail to establish an Eighth Amendment constitutional violation.

<u>Denial of Adequate Medical Care</u>

20.    As mentioned above, in this action, Plaintiff alleges that the ADOC Defendants were "deliberately indifferent" to his serious medical needs in violation of the Eighth Amendment by failing to provide adequate medical treatment for him during his incarceration at Fountain and Davis Correctional Facilities.  (Doc. 1).  Plaintiff's claim regarding health care in this action appears to be that the health care available to him, as a prisoner, was in his opinion, inadequate.  He complains that on weekends, there was not a doctor present at the facilities, and that during the week, one doctor would have to "handle the needs for Fountain prison inmates, and J.O. Davis, Atmore work release center, Loxley work release, Camden work release, and Mobile work release."  (Doc. 6 at 3).

21.    Plaintiff claims that on May 7, 2005, following his altercation with Defendant Inmate Zeigler, he went to the medical facility for treatment, but was unable to

see a doctor.  According to Plaintiff, he was "bleeding very severely," and when he requested to see a doctor, he was informed that there was not a doctor present at the time. Plaintiff then requested to be transported to a free world hospital to see a doctor, and the Department of Corrections refused his request.  (Id.).  Plaintiff complains that he was ultimately taken to segregation without seeing a doctor.  (Id.).

22.     Again, the Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs."  Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)).  In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983.

23.     To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff must first demonstrate the existence of an "objectively serious medical need."  Farrow v. West, 320 F.3d 1235, 1243

30

(11th Cir. 2003).  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994) (quoting Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)).  "[A] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1187 (quoting Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).  As noted by the Ninth Circuit, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104, 97 S. Ct. at 291) (overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)).

24.    In order to meet the required subjective element of an Eighth Amendment denial of medical care claim, a plaintiff must demonstrate "deliberate indifference" to a serious medical need.  Farrow, 320 F.3d at 1243.

> In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence.  Estelle, 429 U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct. 1970.  The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).

25.     For purposes of this analysis, the Court assumes, without deciding, that Plaintiff has demonstrated an "objectively serious medical need" in order to satisfy the first component of his Eighth Amendment claim. The Court turns its focus, instead, to Plaintiff's claim that Defendants were deliberately indifferent to his serious medical need for treatment for his back, as well as his alleged injuries following his altercation with inmate Zeigler in 2005.

26.     Plaintiff maintains that he suffered very severe bleeding following his altercation with Defendant inmate Zeigler on May 7, 2005. However, according to his medical record, which he has not challenged, Plaintiff presented to the medical center with no distress, and his respiration was noted as "even and unlabored." (Doc. 22, Attachment 1 at 8). There was no mention of any back pain on this date, as documented by Plaintiff's medical record. (Id.). Although he did have a few lacerations on his face from the fight, his medical care consisted of cleaning the areas and having steri strips applied. A doctor was notified and he was given Tylenol. (Doc. 22, Attachment 1 at 8).

Other than this particular day, Plaintiff's remaining allegations are very general, just alleging that he has received generally inadequate medical care.

27.     To the contrary, however, Defendants have put forth evidence that Plaintiff has received extensive medical attention while incarcerated at Davis and Fountain.   As discussed earlier, in an affidavit provided by Defendants, the Associate Commissioner of Health Services Ruth Naglich avers that a review of Plaintiff's medical records during the period of time from January 5, 2005, until June 27, 2006, reveals that Plaintiff has been seen twenty six times by either a licensed nurse, licensed nurse practitioner, or a licensed physician.  (Doc. 22, Attachment 6 at 1).  Eleven of these instances of medical care were visits with physicians, and additionally, Plaintiff was sent to an outside community hospital three times for diagnostic radiology procedures during this time period.  (Id.).  Plaintiff has been receiving routinely prescribed medication for both pain and muscle spasms of his back since March 2005.  Plaintiff's medications have included muscle relaxers, non-steroidal anti-inflammatory medication, and a Percogesic pain control medication.  (Id.).  Plaintiff's alleged back pain has been diagnosed by his primary physician as "mild back Arthritis."  (Id. at 3).

28.     It is Defendants' contention that all medical conditions and complaints made known by Plaintiff have been evaluated and treated in a timely and appropriate fashion.  (Id.).  After reviewing the entire record in this action, including Plaintiff's medical records, the Court agrees.  It appears that Plaintiff was appropriately given medical appointments, diagnostic procedures, and medications when he registered a

complaint, and moreover, Plaintiff has offered nothing more than his own opinions that he did not receive proper care.

29.      Having considered the evidence in this action in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish an Eighth Amendment violation by the ADOC Defendants.  As discussed above, in order to satisfy the subjective element of an Eighth Amendment claim, Plaintiff must show that Defendants knew of and disregarded "an excessive risk to [his] health or safety."  Farrow, 320 F.3d at 1245. Stated differently, Plaintiff must show that Defendants had "subjective knowledge of a risk of serious harm," that Defendants disregarded that risk, and that Defendants did so "by conduct that is more than mere negligence."  Id.   The record here is devoid of evidence that Defendants had subjective knowledge of, and disregarded, a risk of serious harm to Plaintiff from his alleged back problems, or his apparently minor scratches resulting from his altercation on May 7, 2005.  To the contrary, the record shows that Defendants provided Plaintiff with appropriate medical care, and with respect to Plaintiff's mild arthritis in his back, Defendants treated Plaintiff with medications, medical evaluations, and diagnostic procedures.  There is no evidence that Defendants were deliberately indifferent to any of Plaintiff's medical problems, or that they ever stopped trying to improve his condition.

30.      The Eleventh Circuit has recognized that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."  Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).  The fact that a plaintiff may disagree

with the efficacy of the treatment recommended or simply prefer a different course of

treatment does not state a valid claim of medical mistreatment under the Eighth

Amendment.  See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("the

question of whether governmental actors should have employed additional diagnostic

techniques or forms of treatment 'is a classic example of a matter for medical judgment'

and therefore not an appropriate basis for grounding liability under the Eighth

Amendment.") (quoting Estelle, 429 U.S. at 107); Del Muro v. Federal Bureau of Prisons,

2004 WL 1542216, *4 (N.D. Tex. 2004) (unpublished) ("[i]t is well-established that a

difference in opinion or a disagreement between an inmate and prison officials as to what

medical care is appropriate for his particular condition does not state a claim for

deliberate indifference to medical needs.").

31.     Moreover, it is well established that "[s]imple medical malpractice . . . does

not rise to the level of a constitutional violation."  Waldrop, 871 F.2d at 1035.  Thus, even

if the Court were to assume that, at times, Plaintiff had been incorrectly diagnosed and/or

treated by the prison medical staff, of which there is no evidence, Eighth Amendment

liability cannot be grounded on "mere negligence."  Farrow, 320 F.3d at 1245.  While the

Court recognizes that Plaintiff may have experienced back discomfort and other physical

discomfort from time to time, there is no evidence that Defendants refused to treat him or

that they engaged in "deliberately indifferent" delay in treating this or any other medical

problem.

32.     Inasmuch as Plaintiff's own medical records establish that he received

appropriate treatment for all health complaints registered, Plaintiff has failed to meet the subjective element of "deliberate indifference" necessary to constitute an Eighth Amendment violation.  Thus, the ADOC Defendants are entitled to summary judgment on all of Plaintiff's claims.

<u>Claim Against Defendant Inmate George Zeigler</u>

33.     Plaintiff claims that during the subject altercation on May 7, 2005, Defendant inmate Zeigler assaulted him.  For this alleged assault, Plaintiff seeks damages in the amount of $100,000.  (Doc. 9).  Section 1983 provides a remedy for deprivations of federal rights.  <u>Wideman v. Shallowford Community Hosp., Inc.</u>, 826 F.2d 1030, 1032 (11th Cir. 1987).  Plaintiff's claim against his fellow inmate is an independent state law claim, and "[s]upplemental jurisdiction permits parties to append state claims in federal cases, provided that the state-law claims 'form part of the same case or controversy' as the federal claims."  <u>Crosby v. Paulk</u>, 187 F.3d 1339, 1352 (11th Cir. 1999).  However, as the Court has determined that Plaintiff has failed to assert any violation of his federal rights, the Court has "discretion to dismiss state-law claims when 'all claims over which it has original jurisdiction' have been dismissed."  <u>Id.</u>  Therefore, the recommendation is that this Court dismiss without prejudice Plaintiff's claim against Defendant Zeigler.

## IV.  CONCLUSION

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants Jerry Ferrell, Walter Myers, Tony Patterson, Jeffrey Knox, Wayne Gray, James Dunn, and Donal Campbell be granted and that Plaintiff's action against these

Defendants be dismissed with prejudice. It is further recommended that the Motion for

Summary Judgment of Defendant inmate George Zeigler be granted and that Plaintiff's

action against this Defendant be dismissed without prejudice.

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.     Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial

determination that transcription is necessary is required before the United States will pay the cost of the transcript.


DONE this 19th day of October, 2007.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE